James H. MILBY, Appellant,

v.

Clell R. MEARS, Appellee.

Court of Appeals of Kentucky.

Jan. 26, 1979.*

Rehearing Denied March 23, 1979.

Discretionary Review Denied June 5, 1979.

* The decision of the panel was made prior to January 1, 1979, but the opinion was not rendered until this date.

Morris Butler, Greensburg, for appellant.

John Smith, Lebanon, for appellee.

Before HAYES, PARK and REYNOLDS, JJ.

PARK, Judge.

This case is an appeal from an order of the Green Circuit Court granting a motion for judgment n. o. v. and dismissing the complaint of the plaintiff-appellant, James H. Milby, in an action arising out of an injury sustained by Milby while working in the tobacco barn of the defendant-appellee, Clell R. Mears.

Two questions are presented on appeal. First, did Milby waive his right to challenge the trial court's findings that he was contributorily negligent as a matter of law by failing to brief that issue in his original brief on appeal? May this court nevertheless consider the issue as raised in his reply brief? Second, if the issues are properly before this court, does the evidence support the trial court's action in granting judgment n. o. v. on the grounds that (1) there

was no evidence that Mears had actual notice of the defect; and (2) Milby was contributorily negligent as a matter of law?

## STATEMENT OF FACTS

In the spring of 1975, Milby rented a plot for tobacco on the farm of Mears. The parties entered into the agreement on a "50–50" basis. Milby was to provide all the labor for the crop while Mears was to provide the land and the barn for housing the tobacco. The parties agreed to split the cost of fertilizers and plant bed materials. They were to share equally in the proceeds from the crop.

In preparation, Mears performed considerable repair work on the barn, which had not been used in several years. In his testimony, Mears said that he had inspected the interior of the barn, including all of the tier poles and stringers.

Later, while Milby was housing tobacco in the barn, a stringer broke causing him to fall. As a result of the fall, Milby sustained severe injuries to his left arm. Milby testified that he was not warned of any defects in the barn, and Mears admitted that he had not warned Milby of any defects.

The jury returned a verdict for Milby in the sum of $38,000. The trial court entered judgment upon that verdict but later sustained Mears's motion for judgment notwithstanding the verdict.

The trial court concluded that the legal relationship between Milby and Mears was that of landlord and tenant, rather than that of master and servant, or that of joint adventurers, as had been alternatively pled. That holding is not questioned on appeal. The trial court then held (1) that no evidence existed that Mears had actual prior knowledge of the defective stringer that broke causing Milby's injury; and (2) that Milby, as a matter of law, failed to exercise ordinary care for his own safety, and that such failure on his part was the cause of his injury.

I

■ The first issue concerns Milby's failure to address the issue of contributory

negligence in his original brief on appeal. It is an established principle of law in Kentucky that an appeal may be dismissed when the appellant fails to file a brief in support of his position. *City of St. Matthews v. McGalin*, Ky., 528 S.W.2d 667 (1975); *Barker v. Lappas*, Ky., 412 S.W.2d 263 (1967); *Klocke v. Vaughn*, Ky., 291 S.W.2d 22 (1956); CR 76.12(8)(b). Even when briefs have been filed, a reviewing court will generally confine itself to errors pointed out in the briefs and will not search the record for errors. *Ballard v. King*, Ky., 373 S.W.2d 591 (1963). An appellant's failure to discuss particular errors in his brief is the same as if no brief at all had been filed on those issues. *R. E. Gaddie, Inc. v. Price*, Ky., 528 S.W.2d 708 (1975). Consequently, the trial court's determination of those issues not briefed upon appeal is ordinarily affirmed. *Stansbury v. Smith*, Ky., 424 S.W.2d 571 (1968); *Hall v. Kolb*, Ky., 374 S.W.2d 854 (1964); *Herrick v. Wills*, Ky., 333 S.W.2d 275 (1960); *Craft v. Hall*, Ky., 275 S.W.2d 410 (1955). Mears asserts that these principles must be applied to Milby's failure to discuss the issue of contributory negligence in his original brief. Because contributory negligence was an alternative basis for the judgment n. o. v., Mears argues that the judgment must be affirmed.

However, this is not a case in which an appellant has completely ignored an issue. While Milby makes no reference to the trial court's holding on contributory negligence in his original brief on appeal, the issue was fully discussed in his reply brief. Therefore, we must consider the effect of raising the issue at that point in the appellate proceedings.

There are no Kentucky cases on the subject of reply briefs. CR 76.12(1) authorizes such reply briefs to be filed by appellants or cross-appellants, and CR 76.12(4)(f) states that reply briefs shall be confined to points raised in the briefs to which they are addressed, and shall not reiterate arguments already presented.[1]

The general rule in other jurisdictions is that the function of the reply brief is rebuttal and that it is improper to raise new points or new grounds for reversal therein. *See e. g. Morris v. Reed*, Mo.App., 510 S.W.2d 234 (1974); *Spence v. Downham*, 140 Ind.App. 385, 223 N.E.2d 587 (1967); *Lunney v. Southern Ry. Co.*, 272 Ala. 611, 133 So.2d 247 (1961). Several courts have held that parties may not utilize reply briefs to cure defects or omissions in the original brief on appeal. *See Bayley v. Kane*, 16 Wash.App. 877, 560 P.2d 1165 (1977); *Kinsaul v. Florala Tel. Co.*, 285 Ala. 16, 228 So.2d 777 (1969); *Michaels v. Johnson*, 140 Ind.App. 389, 223 N.E.2d 585 (1967). Nevertheless, the rule is not an absolute, and many courts have permitted exceptions where good cause is shown. *See e. g. Protection Mutual Ins. v. Kansas City*, Mo. App., 551 S.W.2d 909 (1977); *Harrison v. Pittman*, Tenn., 534 S.W.2d 311 (1976); *Hux v. Raben*, 38 Ill.2d 223, 230 N.E.2d 831 (1967).

When a judgment is based upon alternative grounds, the judgment must be affirmed on appeal unless both grounds are erroneous. Consequently, good appellate practice dictates that the appellant's original brief should address every ground upon which the judgment is based. Only in that way may the appellee respond in any orderly fashion.

In this case, Mears was placed in a dilemma by Milby's initial failure to brief the issue on contributory negligence. If he ignored the merits of the issue, Mears would run the risk that Milby would discuss the merits of the contributory negligence issue in his reply brief. Because this is an issue of first impression in Kentucky, Mears would not know whether this court would grant a motion pursuant to CR 76.12 to strike a reply brief which violated CR 76.-12(4)(f) by raising new points. Mears followed the prudent course by addressing the issue in his appellee's brief even though it

---

1. This language in CR 76.12(4)(f) is new and was not found in the corollary provision of RCA 1.240.

now enables Milby to argue that his reply brief conforms to CR 76.12(4)(f) because it is confined to points raised for the first time in the appellee's brief.

■ We conclude that the issue of contributory negligence should have been addressed in the Milby's original brief. Nevertheless, noncompliance with the rules governing briefs does not require that a brief always be stricken. The appropriate remedy for such non-compliance with the rules must be left to the sound discretion of the appellate court. *Burberry v. Bridges*, Ky., 427 S.W.2d 583 (1968).

■ In this case, Mears has suffered no prejudice as a result of Milby's failure to address the contributory negligence issue prior to the reply brief. In his appellee's brief, Mears thoroughly argued the merits of the issue of contributory negligence. He has shown no need to respond to Milby's reply brief. Both parties discussed the issue at oral argument. Having in mind that the procedural question is a matter of first impression in Kentucky, we conclude that we should consider the merits of the appeal.

■ The reply brief is not a device for raising new issues which are essential to the success of the appeal. In the future, it may be appropriate to impose more severe penalties by granting motions to strike reply briefs which raise new issues which should have been the subject of the appellant's original brief.

## II

Having determined to consider the merits of Milby's appeal, we must consider whether the evidence in the record supports the jury's verdict, thus rendering the trial court's action in granting judgment n. o. v. improper.

■ It has been a longstanding rule in Kentucky that a tenant takes the premises as he finds them. The landlord need not exercise even ordinary care to furnish reasonably safe premises, and he is not generally liable for injuries caused by defects therein. *E. g. Dice's Adm'r v. Zweigart's*

*Adm'r*, 161 Ky. 646, 171 S.W. 195 (1914). Nevertheless, it is an established principle that a landlord has a duty to disclose a known defective condition which is unknown to the tenant and not discoverable through reasonable inspection. *See Parson v. Whitlow*, Ky., 453 S.W.2d 270 (1970); *Carver v. Howard*, Ky., 280 S.W.2d 708 (1955); *Larkin v. Baker*, 308 Ky. 364, 214 S.W.2d 379 (1948); *Consolidation Coal Co. v. Zarirs*, 222 Ky. 238, 300 S.W. 615 (1927); *Speckman v. Schuster*, 183 Ky. 326, 209 S.W. 372 (1919). However, the tenant may not recover from the landlord if he failed to exercise ordinary care for his own safety and this contributed to his injury. *See Houchin v. Willow Ave. Realty Co.*, Ky., 453 S.W.2d 560 (1970); *Totten v. Parker*, Ky., 428 S.W.2d 231 (1967); *Spurling v. Paterno-Mayflower, Inc.*, Ky., 358 S.W.2d 503 (1962); *Wright & Taylor, Inc. v. Smith*, Ky., 315 S.W.2d 624 (1958).

In this case, the issues of the landlord's negligence and the tenant's contributory negligence were submitted to the jury. The trial judge instructed the jury that they could find for Milby only if they believed that Mears had actual knowledge of the defect in the stringer and had failed to warn Milby of the defect. The court also instructed the jury that Milby had a duty to inspect the barn and to exercise ordinary care for his own safety. The jury found for Milby on both issues. The trial court entered judgment n. o. v. for Mears because, in its opinion, there was no evidence that Mears had actual knowledge of the defect and because Milby was contributorily negligent as a matter of law.

■ We conclude that there was sufficient evidence to justify submitting the issue of Mears's negligence to the jury. First, there was evidence from which the jury could find that a prior defect existed in the stringer which broke under Milby's weight. Both Milby and his uncle testified that they inspected the stringer after the fall and observed an old split at the point where it broke, causing Milby's fall. Second, Mears admitted that he had inspected every tier pole and stringer in the

barn, including the stringer which broke, and that he had made necessary repairs. He testified, "I insured that [the stringers] were all nailed and put some additional nails in them and looked to see if they were defective in any way." He was under no duty to inspect for defects. However, having admitted that he did look, Mears may not claim that he did not see. *See e. g. Renfro v. Fox*, Ky., 418 S.W.2d 761 (1967); *Kentucky Bus Lines v. Wilson*, Ky., 258 S.W.2d 486 (1953). Certainly, there was evidence from which the jury could find that a readily observable defect existed and that Mears had actual knowledge of the defect as a result of his inspection of the tier poles and stringers.

However, we believe the trial court was correct in its finding that Milby was contributorily negligent as a matter of law. In determining whether a person is contributorily negligent, the surrounding circumstances must be considered, such as the exigency under which he acted, and his knowledge, actual or imputed, of the danger and the nature of the risk incurred. *E. g. Allen v. Dillman*, Ky., 249 S.W.2d 23 (1952).

As we stated above, a tenant may not recover from a landlord for failure to disclose a defective condition of the premises if the tenant has knowledge of the condition or could discover the condition by reasonable inspection. *See e. g. Speckman v. Schuster, supra*. In this case, Milby had every opportunity to inspect the premises prior to the time when the housing of the tobacco began and yet he neglected to do so. Although he testified that he was in a hurry to house the tobacco on the day in question because it had begun to rain and because he was paying hourly wages to his employees, such circumstances could not excuse his failure to make an inspection prior to the time he commenced housing tobacco. Had Milby made such an inspection he should have observed the defect. If the defect was apparent to Mears during his inspection, by the same token it would have been apparent had Milby inspected the barn. *See Spurling v. Paterno-Mayflower,*

*Inc., supra*. Milby was unaware of the inspection and repairs made by Mears; thus Milby did not rely on any representations by Mears respecting the safety of the barn.

Milby was the sole witness on the issue of the care he exercised for his own safety, and his testimony affirmatively shows that he failed to exercise any care for his own safety. No jury issues existed. *Pease v. Nichols*, Ky., 316 S.W.2d 849 (1958). In this case, Milby admitted that he had failed to make any examination of the tier poles and stringers in the barn before his fall even though he testified that it was customary to do so. At trial, Milby testified:

Q. Did you look at the stringer or did you look at the tier pole before you got out on it?

A. I didn't make any examination because this barn was the barn the tobacco was put in and I took it for granted that the barn was suitable for that purpose.

Q. Did you look at the stringer before you went out there?

A. No sir.

Q. Did you test the tier pole, . . . either of the two tier poles that you stood on? I assume you were standing on two tier poles.

A. When we got started . . . When you have hands hired, (I think most of you here know this) when you are paying a considerable sum for hourly wages, you're trying to house as fast as you can. As we moved on down, well I didn't jump up and down on them or anything like that. No.

Q. But the first time you did do that?

A. When I climb up in a barn you always kind of touch the tier pole and see how steady it is and then you climb on up.

Q. But you didn't do that to the one where the stringer broke?

A. No sir.

We emphasize that this case involves a tenant and not an invitee such as a temporary employee housing tobacco. An invitee is not obliged to make an inspection of the premises to assure himself that they are safe, and he is contributorily negligent only when the peril is obvious to a person of

**730**

ordinary prudence in the situation. *Dean v. Martz*, Ky., 329 S.W.2d 371 (1959). The tenant, on the other hand, has a right to occupy the premises over a longer period of time. Because he has more opportunity to inspect, the law requires that the tenant take greater precautions for his own safety.

Because we find that the evidence clearly demonstrates that Milby failed to exercise any care for his safety and that his neglect was a substantial factor in his fall, we affirm the trial court's holding that Milby was contributorily negligent as a matter of law.

The judgment of the circuit court is affirmed.

All concur.